UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JOHN T. GOHRANSON, *et al.*,

    Plaintiffs,

v.

SNOHOMISH COUNTY, *et al.*,

    Defendants.

NO. C16-1124RSL

ORDER FOR FURTHER BRIEFING AND DISMISSING NEGLIGENCE CLAIM AGAINST DEFENDANT LEIGHT

This matter comes before the Court on the "Snohomish County Defendants' Motion for Summary Judgment on All Federal Claims and for Partial Summary Judgment on State Law Medical Negligence Claims." Dkt. # 82. Plaintiffs, the personal representative and father of decedent Lindsay M. Kronberger, assert that the medical care provided to Ms. Kronberger while she was in the Snohomish County Jail violated her rights under the Fourth, Eight, and Fourteenth Amendments of the United States Constitution, was negligent and outrageous, and deprived Dale Kronberger of his relationship with his child in violation of his Fourteenth Amendment rights. In this motion, the Snohomish County defendants seek dismissal of all of the federal causes of action and the negligence claim asserted against two of the nurses who interacted with Ms. Kronberger in the week before her death.

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact that would preclude the entry of judgment as a matter of law. The party seeking summary dismissal of the case "bears the initial

ORDER FOR FURTHER BRIEFING AND
DISMISSING NEGLIGENCE CLAIM
AGAINST DEFENDANT LEIGHT - 1

responsibility of informing the district court of the basis for its motion" (Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)) and "citing to particular parts of materials in the record" that show the absence of a genuine issue of material fact (Fed. R. Civ. P. 56(c)). Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate "specific facts showing that there is a genuine issue for trial." Celotex Corp., 477 U.S. at 324. The Court will "view the evidence in the light most favorable to the nonmoving party . . . and draw all reasonable inferences in that party's favor." Krechman v. County of Riverside, 723 F.3d 1104, 1109 (9th Cir. 2013). Although the Court must reserve for the jury genuine issues regarding credibility, the weight of the evidence, and legitimate inferences, the "mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient" to avoid judgment. City of Pomona v. SQM N. Am. Corp., 750 F.3d 1036, 1049 (9th Cir. 2014); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. S. Cal. Darts Ass'n v. Zaffina, 762 F.3d 921, 925 (9th Cir. 2014). In other words, summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor. FreecycleSunnyvale v. Freecycle Network, 626 F.3d 509, 514 (9th Cir. 2010).

Having reviewed the memoranda, declarations, and exhibits submitted by the parties,[1] the

---

[1] Plaintiffs' request to strike the motion in its entirety is denied. While defendant's concurrent filing of multiple summary judgment motions was improper under LCR 7(e), the Court extended the noting date so that plaintiffs had more time in which to present their opposition. Given the number of defendants, the number of claims, the weighty legal matters raised, and the prior disclosure of the concurrent motions, the Court finds that the County's filing of two dispositive motions was not unreasonable.
    Defendants' request to strike the expert report of Jane Grametbaur, RN, is denied. To the extent Nurse Grametbaur was not provided with relevant information, her opinions may be subject to attack on cross-examination, but it does not make them inadmissible.
    The Court has not considered the Declaration of Robert Prevot because it was not cited by plaintiffs as support for any proposition.

ORDER FOR FURTHER BRIEFING AND
DISMISSING NEGLIGENCE CLAIM
AGAINST DEFENDANT LEIGHT - 2

Court finds as follows:

On January 3, 2014, Lindsay Kronberger was booked into Snohomish County Jail. As part of the intake health screening, Ms. Kronberger acknowledged that she had used heroin that morning and that she had withdrawal problems. Ms. Kronberger was 5'4" tall, weighed 97 pounds, and had a sitting blood pressure of 98/68 and a pulse of 112. Defendant Joy Maine, RN, placed Ms. Kronberger on opiate withdrawal watch. Ms. Kronberger was released from custody on January 6, 2014, but was booked again around 4:00 am the next morning. She was again placed on opiate withdrawal watch.

The jail's medical housing unit ("MHU") utilized a "Withdrawal Form" on which seven days of notes regarding the patient's experiences through detoxification could be recorded. The form indicates that the date Ms. Kronberger last used heroin was unknown and reflects her vital signs and various interventions between January 7th and January 12th. Dkt. # 83-1 at 15.[2] Her vital signs fluctuated, with the lowest blood pressure readings on January 10th and 11th and the highest pulse measurements on January 9th and 10th. The form identifies common therapies for treating the symptoms and side effects of withdrawal and shows that Ms. Kronberger was provided fluids, anti-nausea medicine, anti-diarrhea medicine, and, on one instance, ibuprofen while on withdrawal watch.

The MHU form does not provide an accurate picture of Ms. Kronberger's detox experience since it ignores the first four days of her symptoms, makes no effort to record fluid intake and output, and is not comprehensive. The form does not capture the moment when Ms. Kronberger's "normal" withdrawal symptoms of vomiting, diarrhea, dehydration, aches and

---

Defendant's request to strike the Declaration of Amy Glover and/or all evidence related to third-party assessments of the jail or other jail deaths is denied. The evidence is not entirely irrelevant, and defendants have not made a showing under Fed. R. Ev. 403 that would justify its exclusion in the context of this motion for summary judgment.

[2] The form does not capture Ms. Kronberger's status or experiences during the first stint of her incarceration from January 3rd to January 6th.

ORDER FOR FURTHER BRIEFING AND
DISMISSING NEGLIGENCE CLAIM
AGAINST DEFENDANT LEIGHT - 3

pains, anxiety, rapid heartbeat, *etc.*, morphed into a dangerous electrolyte imbalance. One of plaintiffs' experts, Michael J. Jobin, MD, FACEP, opines that Ms. Kronberger "started to exhibit signs and symptoms of dehydration and electrolyte disturbances on January 10th, but really worsened and became more symptomatic on the 11th and 12th of January." Dkt. # 99 at 9. There is evidence in the record that, had anyone recognized the signs and symptoms for what they were on January 10th through January 12th, more intensive therapies could have been initiated to improve her hydration and reverse the deadly spiral of vomiting and diarrhea that resulted in severe dehydration and electrolyte imbalance. There is also evidence in the record that her custodians should have recognized what they were seeing and, knowing the complications associated with opiate withdrawal and knowing that Ms. Kronberger was particularly at risk of those complications, at least made an effort to clinically evaluate her hydration status and electrolyte balance. Finally, one could reasonably conclude that the failure to take these steps led to Ms. Kronberger's death.

Given this recitation of the evidence, defendants generally concede that there are genuine issues of disputed fact regarding whether defendants were negligent in their care of Ms. Kronberger.[3] A mere lack of reasonable care does not, however, establish a claim under § 1983 that the government was deliberately indifferent to a pre-trial detainee's serious medical needs. Because plaintiffs' claim arises under the Fourteenth Amendment,[4] plaintiffs must show that Ms. Kronberger was deprived of life without due process of law, and a deprivation has historically

---

[3] Two of the individual defendants have moved for summary judgment on the negligence claim. Their motion is considered below.

[4] Although plaintiffs assert a claim under the Fourth Amendment, there are no allegations of unlawful search, seizure, or use of force. With regards to the Eighth Amendment claim, because Ms. Kronberger was a pre-trial detainee and was not being held as a punishment following conviction, the substantive due process clause of the Fourteenth Amendment provides the analytical framework to evaluate the government's actions in this case. See Lolli v. County of Orange, 351 F.3d 410, 418-19 (9th Cir. 2003).

ORDER FOR FURTHER BRIEFING AND
DISMISSING NEGLIGENCE CLAIM
AGAINST DEFENDANT LEIGHT - 4

been interpreted to require deliberate governmental action, not mere negligence. Kingsley v. Hendrickson, __ U.S. __, 135 S. Ct. 2466, 2472 (2015). How deliberate or intentional defendants' conduct must be to give rise to liability under § 1983 has been in flux over the past few years and, ultimately, the Court is unable to resolve this dispute on the papers submitted because defendants applied the wrong standard.

Until 2015, the Ninth Circuit applied traditional Eighth Amendment standards to evaluate Fourteenth Amendment claims such as this one. Under the Eighth Amendment test, plaintiff had to show that defendant was deliberately indifferent to the detainee's medical needs, meaning that the defendant knew of and disregarded an excessive risk to the inmate's health and safety. Gibson v. County of Washoe, 290 F.3d 1175, 1187 (9th Cir. 2002). In that context, the Supreme Court roundly rejected an objective test for deliberate indifference, instead holding that an official has knowledge of an excessive risk only when the official is aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and actually draws that inference. Farmer v. Brennan, 511 U.S. 825, 837 (1994). As the Supreme Court explained:

> This approach comports best with the text of the Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concerns when it imposes tort liability on a purely objective basis. But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

Id. at 837-38 (internal citations omitted). Thus, until 2015, a person alleging deliberate indifference to his or her medical needs had to show that defendants were subjectively aware of a substantial risk of serious harm and yet took no action. If the Farmer standard still applied, plaintiffs § 1983 claim would fail because they have not produced evidence that any of the corrections officers or nurses who interacted with Ms. Kronberger in the week before her death

ORDER FOR FURTHER BRIEFING AND
DISMISSING NEGLIGENCE CLAIM
AGAINST DEFENDANT LEIGHT - 5

recognized that her medical condition had transitioned from the horror that is opiate withdrawal to a life-threatening electrolyte imbalance. As Nurse Kooiman stated in her deposition, "I did not -- I did not see in Ms. Kronberger a life and death situation in her demeanor and in her -- if I had, I certainly would have acted differently, but I did not." Dkt. # 83-1 at 44.

In 2015, the Supreme Court considered the textual differences between the Eighth Amendment and the Fourteenth Amendment and found that a person's status as a prisoner or as a pre-trial detainee had significant legal implications. In <u>Kingsley v. Hendrickson</u>, a pretrial detainee alleged that several jail officers used excessive force against him in violation of the due process clause of the Fourteenth Amendment. In that context, the Supreme Court held that the detainee had the burden of showing that the officers' use of force was objectively unreasonable, not that they were subjectively aware that the force used was excessive. <u>Kingsley</u>, 135 S. Ct. at 2470. The Supreme Court made clear that the underlying use of force had to be deliberate, meaning that force had to be used purposefully and knowingly, even if the officer was unaware that it was excessive. <u>Id.</u> at 2472. In <u>Kingsley</u>, it was the officer's discharge of a Taser for five seconds - the physical acts undertaken in the world - that satisfied the purposeful and knowing requirement. This intentional conduct was essential to a successful claim because "liability for *negligently* inflicted harm is categorically beneath the threshold of constitutional due process." <u>Id.</u> (quoting <u>County of Sacramento v. Lewis</u>, 523 U.S. 833, 849 (1998) (emphasis added in <u>Kingsley</u>). If the Taser had gone off accidentally, the harm might still be the same, but the pretrial detainee could not prove a violation of the due process clause because there would be no deliberate decision on the part of a government official that could satisfy the state-of-mind requirement of the Fourteenth Amendment. <u>Id.</u> (citing <u>Daniels v. Williams</u>, 474 U.S. 327, 331 (1986)).

The question for purposes of this case is whether <u>Kingsley</u>'s two-step state-of-mind analysis applies where the defendant's physical acts are of omission, rather than commission. The Ninth Circuit recently decided two cases that answer that question in the positive. In <u>Castro</u>

ORDER FOR FURTHER BRIEFING AND
DISMISSING NEGLIGENCE CLAIM
AGAINST DEFENDANT LEIGHT - 6

v. County of Los Angeles, 833 F.3d 1060 (9th Cir. 2016), the Ninth Circuit concluded that Kingsley applied to a pretrial detainee's Fourteenth Amendment claim for injuries suffered when defendants failed to protect him from harm at the hands of his cell mate. Recognizing that Kingsley involved the affirmative use of force while Castro alleged a failure to act, the Ninth Circuit reasoned that as long as "the officer's conduct with respect to the plaintiff was intentional," the first, subjective step of the state-of-mind analysis was satisfied. Castro, 833 F.3d at 1070. In a failure-to-protect case such as that brought by Castro, the intentional conduct could be the decision to place the detainee in a cell that was not subject to audial or visual monitoring or defendant's choice of how often to monitor the detainees. Once an intentional act toward the plaintiff is established, a pretrial detainee need not prove that the officer was subjectively aware of a substantial risk of serious harm, only that there was such a risk, that it could have been eliminated through measures that were reasonable and available to the officer, that the officer did not take those measures, and that plaintiff was injured as a result. Id. at 1070-71. The Ninth Circuit reiterated that a lack of due care, *i.e.*, negligence, is not enough to constitute a "deprivation" under the Fourteenth Amendment and that a pretrial detainee must show something more akin to reckless disregard on defendant's part.

Late last month, the Ninth Circuit applied Kingsley in the context of a pretrial detainee's claim that defendants had violated his right to adequate medical care under the Fourteenth Amendment. Gordon v. County of Orange, __ F.3d __, 2018 WL 1998296 (9th Cir. Apr. 30, 2018).

> The elements of a pretrial detainee's medical care claims against an individual defendant under the due process clause of the Fourteenth Amendment are: (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate the risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved -- making the consequences of the defendant's conduct obvious; and (iv) by not taking such

measures, the defendant caused the plaintiff's injuries.

Id. at *5. It is now clear that plaintiffs' claims are governed by a two-part analysis that requires plaintiffs to identify the intentional decision or conduct which put Ms. Kronberger at substantial risk of serious harm and evaluates defendants' responses to that harm through an objective, rather than subjective, lens. Defendants, in seeking summary judgment on the estate's Fourteenth Amendment claim and in reply, applied a subjective standard which has now been rejected by the Ninth Circuit. The Court will not speculate as to what defendants' arguments might be under the objective standard or how the recent clarification of the law in this area impacts the qualified immunity analysis.

Plaintiff Dale Kronberger has asserted a personal Fourteenth Amendment claim arising from the violation of his constitutionally protected liberty interest in continued association with his child. See Chaudhry v. City of Los Angeles, 751 F.3d 1096, 1106 (9th Cir. 2014). Given the circumstances of this case, it appears that Mr. Kronberger is pursuing a substantive, rather than a procedural, due process claim, but neither party has addressed the elements of this claim.

Defendants seek dismissal of the state law negligence claim asserted against Nurses Leight and Lusk on the ground that there is no evidence in the record from which a reasonable jury could conclude that Ms. Kronberger's death was proximately caused by their conduct. Plaintiffs rely on the expert opinion or Dr. Jobin to supply the necessary causal connection. Dkt. # 106 at 35. Dr. Jobin opines that the metabolic and electrolyte changes which led to Ms. Kronberger's death "would have been detected on blood tests had they been performed on January 10, 2014[,] when Lindsey Kronberger started to show signs of dehydration" (Dkt. # 99 at 9). Nurse Leight had Ms. Kronberger under her care on January 7th: there is, therefore, no evidence that any of the nursing failures identified on Nurse Leight's part caused Ms. Kronberger's death. Nurse Lusk, however, had Ms. Kronberger under her care during the afternoon and evening of January 10th, during which time Dr. Jobin opines that the medical staff

should have recognized symptoms of dehydration and electrolyte disturbances, performed a medical evaluation, and provided appropriate care that would have prevented the patient's death.[5] The negligence claim against Nurse Lusk may proceed.

For all of the foregoing reasons, the Snohomish County defendants' motion is GRANTED in part, DENIED in part, and otherwise taken under advisement. The negligence claim against Nurse Leight is DISMISSED. The negligence claims against Nurse Lusk may proceed. The parties are invited to submit supplemental memoranda applying <u>Kingsley</u> and <u>Gordon</u> to the facts of this case, discussing the impact of the new case law on the qualified immunity analysis, and addressing the substantive due process claim asserted by Dale Kronberger. The Clerk of Court is directed to renote the Snohomish County Defendants' motion for summary judgment on the federal claims (Dkt. # 82) for Friday, June 29, 2018. Defendants shall file their supplemental memorandum of no more than fifteen pages on or before June 7, 2018. Plaintiffs shall file their response memorandum of no more than fifteen pages on or before June 25, 2019. Defendants shall file their reply, if any, on or before the note date.

Dated this 29th day of May, 2018.

*Robert S. Lasnik*
Robert S. Lasnik
United States District Judge

---

[5] Defendants inexplicably and incorrectly assert in reply that Nurse Lusk had Ms. Kronberger under her care "in the early morning hours of the 10th." Dkt. # 114 at 18. There is no support for this assertion.

ORDER FOR FURTHER BRIEFING AND
DISMISSING NEGLIGENCE CLAIM
AGAINST DEFENDANT LEIGHT - 9