UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JOHN T. GOHRANSON, *et al.*,

    Plaintiffs,

v.

SNOHOMISH COUNTY, *et al.*,

    Defendants.

NO. C16-1124RSL

ORDER GRANTING IN PART MOTION FOR SUMMARY JUDGMENT ON FEDERAL CLAIMS

    This matter comes before the Court on the supplemental memoranda submitted by the parties applying <u>Kingsley v. Hendrickson</u>, __ U.S. __, 135 S. Ct. 2466 (2015), and <u>Gordon v. County of Orange</u>, 888 F.3d 1118 (9th Cir. 2018) to the facts of this case, discussing the impact of the new case law on the qualified immunity analysis, and addressing the substantive due process claim asserted by Dale Kronberger. Having reviewed the supplemental memoranda and the remainder of the record, and taking the facts in the light most favorable to plaintiffs, the Court finds as follows:

**A. Violation of Lindsay M. Kronberger's Rights Under the Fourteenth Amendment** [1]

    Until 2015, a detainee alleging that the government had been deliberately indifferent to

---

[1] Because Ms. Kronberger was a pre-trial detainee and was not being held as a punishment following conviction, the substantive due process clause of the Fourteenth Amendment provides the analytical framework to evaluate the government's actions in this case. <u>See</u> <u>Lolli v. County of Orange</u>, 351 F.3d 410, 418-19 (9th Cir. 2003).

ORDER GRANTING IN PART MOTION
FOR SUMMARY JUDGMENT ON
FEDERAL CLAIMS - 1

her medical needs had to show that defendants were subjectively aware of a substantial risk of serious harm when they failed to provide medical care. The Court previously found that plaintiffs' medical care claim would fail under that standard "because they have not produced evidence that any of the corrections officers or nurses who interacted with Ms. Kronberger in the week before her death recognized that her medical condition had transitioned from the horror that is opiate withdrawal to a life-threatening electrolyte imbalance." Dkt. # 136 at 5-6. The contours of a pretrial detainee's medical care claims under the Due Process Clause have changed since 2015, however, such that custodians can now be liable in the absence of subjective knowledge if a "reasonable official in the circumstances would have appreciated the high degree of risk involved." <u>Gordon</u>, 888 F.3d at 1125. That fact is dispositive of the claims against the individual defendants.

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982). "[A] defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." <u>Plumhoff v. Rickard</u>, 572 U.S. 765, 134 S. Ct. 2012, 2023 (2014). When determining whether defendants are qualifiedly immune from suit in this case, "the salient question . . . is whether the state of the law in [2014] gave [defendants] fair warning that their alleged treatment of [Ms. Kronberger] was unconstitutional." <u>Hope v. Pelzer</u>, 536 U.S. 730, 741 (2002).[2]

---

[2] The Court declines to decide the first part of the qualified immunity analysis, namely whether the individual defendants' conduct violated Ms. Kronberger's constitutional rights under <u>Kingsley</u> and <u>Gordon</u>. Individual defendants made efforts to monitor Ms. Kronberger's situation and responded to her needs with differing degrees of care. Taken together, those efforts were insufficient to avert the detainee's death, but determining whether a particular defendant was simply negligent or was objectively and deliberately indifferent in the context of a not-enough-medical-care claim is extremely

As discussed above, defendants' conduct was not unconstitutional in 2014 because they were not subjectively aware that Ms. Kronberger was suffering from life-threatening dehydration and electrolyte imbalance. The announcement of an objective standard for judging defendants' conduct post-dated the events that gave rise to this litigation and imposed additional requirements on defendants. Previously, custodial and medical staff were required to respond to the facts of which they were aware: now they must consider the possibility that additional inquiry, evaluation, or testing is necessary to ensure that they are correctly apprehending the risks involved and are being reasonably responsive to those risks. Because there was no clearly established right to medical attention from jail staff who did not actually perceive the need for such attention in 2014, qualified immunity bars plaintiffs' Fourteenth Amendment claim for lack of adequate medical care. See Bailey v. Feltmann, 810 F.3d 589, 593 (8th Cir. 2016) (qualified immunity applies, in part, because it was not "clearly established that a standard of objective reasonableness applies under the Due Process Clause" until Kingsley); Dyer v. Fyall, 322 F. Supp.3d 725, 740 (N.D. Tex. June 6, 2018) ("So, given that some Fifth Circuit cases require plaintiffs to show intent to cause harm in medical-inattention cases and other[s] do not, there is no clearly established right in the Fifth Circuit to be free from medical inattention by officers who do not actually intend to cause harm.").

**B. Municipal Liability**

Municipalities and other local government units can be sued for constitutional violations under § 1983 if a municipal policy, practice, or custom caused the violation. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-91 (1978). A municipality cannot be held liable solely because it employs a tortfeasor, however: its own conduct must be causally related to the constitutional violation. Id. at 691-92.

---

challenging on both the facts and the law. The Court therefore exercises its discretion to address the "clearly established" prongs of the qualified immunity analysis first. Pearson v. Callahan, 555 U.S. 223, 236 (2009).

In the underlying motion papers, plaintiffs identify two municipal acts, omissions, policies, or practices that were the moving force behind the alleged failure to provide adequate medical care to Ms. Kronberger. First, plaintiffs assert that Snohomish County had no policies in place to properly care for inmates who were withdrawing from opiods. Dkt. # 106 at 22. Plaintiffs' "no policy" argument is contradicted by the fact that the jail has a written policy entitled "Referring & Caring for Prisoners with Drug & Alcohol Problems." Dkt. # 83-1 at 6. There is, however, an issue of fact regarding whether this policy was available to the staff when Ms. Kronberger was detained. In September 2013, outside auditors found that intake staff were unable to identify or locate applicable polices and procedures (Dkt. # 107-6 at 4), that requests for medical protocols were unfulfilled, making it "unclear if they existed, or if they just were not available," (Dkt. # 107-6 at 5), and that nurses were doing what they were trained to do generally without the assistance of approved health care policies and procedures (Dkt. # 107-7 at 6). The written policy produced by defendants in this litigation was issued in 1994, became effective in 2000, and required medical staff to "monitor and document vital signs, contact Physician for medical orders[,] and implement medical regime." Dkt. # 83-1 at 6. There was no physician on staff when the auditors were reviewing jail procedures, supporting the inference that the policy was not in use at the time.

Plaintiffs also argued that the County had an affirmative policy and practice of failing to provide adequate medical care to inmates at the jail. Dkt. # 106 at 22. As proof, plaintiffs rely in part on the fact that seven individuals died while in custody between 2010 and 2013. Plaintiffs offer no evidence regarding any of these deaths. There is no indication that they were caused by a lack of medical care, much less untreated opiod withdrawal symptoms, and the fact finder would have to impermissibly speculate regarding their circumstances in order to deem them relevant to this case.

The deaths apparently prompted a number of reviews and reports that are relevant to this case, however. The reports and recommendations, provided to the County in August and

September 2013, highlight deficiencies within the jail generally and inadequacies in the provision of medical services particularly. See Dkt. # 107-7 at 4 ("Inmate crowding continues to exist, health care and custody staffing levels are insufficient to ensure consistent assessment of inmate health care needs and delivery of services care [sic] by qualified health care providers."). The report provided by Pierce County representatives specifically identified concerns regarding the treatment of withdrawal patients, noting that the medical unit is understaffed and cannot provide the level of monitoring and assessments that substance abusers require when taken into custody. Dkt. # 107-3. The auditors generally recommended increasing medical staffing levels and training, hiring a supervising physician, reviewing and instituting health care policies and protocols, and improving medical recordkeeping.

The evidence could support the conclusion that the County was aware that the jail's policies and procedures - including staffing levels, written protocols, oversight mechanisms, and medical records - gave rise to a substantial risk that detoxing inmates and detainees would not receive adequate medical care. One could also reasonably conclude that, had the County followed the auditors' recommendations before Ms. Kronberger was taken into custody, her entire detox history starting on January 3, 2014, would have been available to the intake and medical staff, she would have been monitored more closely, and her medical treatment would have been supervised by a physician who was trained to recognize the signs of severe dehydration and electrolyte imbalance. A reasonable jury could, therefore, conclude that the County failed to act to ameliorate a known risk, evidencing deliberate indifference that was causally linked to the constitutionally inadequate care of which plaintiffs complain. Defendants point out that the County hired a physician in August 2013 to consult on medically serious or complex cases, review medical services provided by the nursing staff, review and approve medical polices on an annual basis, and provide input and recommendations on an electronic medical records system. Dkt. # 107-5 at 3. It is undisputed, however, that the physician had not yet updated relevant policies, had not modernized the medical records system, did not evaluate

ORDER GRANTING IN PART MOTION
FOR SUMMARY JUDGMENT ON
FEDERAL CLAIMS - 5

Ms. Kronberger or her medical records at any point, and did not consult on her care: in short, his hiring arguably made no tangible or relevant difference to Ms. Kronberger and did not break the direct causal connection between the County's policies and her death. Plaintiffs have raised a genuine issue of fact regarding the County's liability for the alleged failure to provide adequate medical care.[3]

**D. Violation of Dale Kronberger's Rights Under the Fourteenth Amendment**

"Parents . . . may assert Fourteenth Amendment substantive due process claims if they are deprived of their liberty interest in the companionship and society of their child . . . through official conduct." Lemire v. Cal. Dep't of Corrs. and Rehab., 726 F.3d 1062, 1075 (9th Cir. 2013). The parties agree that, if plaintiffs are able to establish that defendants were deliberately indifferent to Ms. Kronberger's right to adequate medical care, "such indifference may also 'rise to the conscience-shocking level' required for a substantive due process violation." Id. Defendants make no effort to distinguish the two claims, instead declaring that the elements of Mr. Kronberger's substantive due process claim "are indistinguishable from the Estate's claim of deliberate indifference." Dkt. # 137 at 16. Mr. Kronberger's Section 1983 claim against the County may therefore proceed.

For all of the foregoing reasons, the Snohomish County defendants' motion for summary

---

[3] Defendants suggest that the auditors' reports are irrelevant because they describe the situation in the jail four or five months before Ms. Kronberger was taken into custody and argue that plaintiffs must provide an analysis of the jail's staffing levels and policies as of January 2014 in order to prove their case. Dkt. # 114 at 5. Defendants offer no authority for the contention that a relatively recent report identifying shortcomings that impacted the decedent should be ignored simply because it is a few months old. The reports are evidence that the medical services provided in the jail were inadequate shortly before Ms. Kronberger was taken into custody and that the County was aware of the inadequacies. Defendants are free to rebut the inference of deliberate indifference by showing that they had, in fact, taken steps to correct the identified deficiencies as of January 2014. Or they may attempt to rebut the inference of causation by showing that none of the deficiencies was causally related to Ms. Kronberger's death. In these circumstances, the burden is on defendants to produce evidence rebutting the reasonable inferences that arise from the auditors' reports.

ORDER GRANTING IN PART MOTION
FOR SUMMARY JUDGMENT ON
FEDERAL CLAIMS - 6

judgment on all federal claims (Dkt. # 82) is GRANTED in part and DENIED in part. The Section 1983 claims against the individual defendants are DISMISSED on qualified immunity grounds. The Section 1983 claims against Snohomish County may proceed.

Dated this 13th day of November, 2018.

*Robert S. Lasnik*
Robert S. Lasnik
United States District Judge

ORDER GRANTING IN PART MOTION
FOR SUMMARY JUDGMENT ON
FEDERAL CLAIMS - 7